Minute Order Form (6/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 5762 | DATE | 4/7/2004 |
| CASE TITLE | LOCAL UNION 15 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS vs. EXELON CORP | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted. Plaintiff's request for attorneys' fees is denied. This action is remanded to the arbitrator for further proceedings and entry of a final binding award. Any other pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | APR 0 8 2004 | |
| | Notified counsel by telephone. | | date docketed | 33 |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | GMA docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 2004 APR -8 AM 8:00 | 4/7/2004 date mailed notice | |
| JS | courtroom deputy's initials | Date/time received in central Clerk's Office | JS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Local Union 15, International Brotherhood of Electrical Workers, AFL-CIO, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 03 C 5762 |
| Exelon Corporation, including its subsidiaries, Commonwealth Edison Company, Exelon Generation Company, and Exelon Business Services Company, | ) ) ) ) ) ) | |
| Defendant. | ) ) ) | |

**DOCKETED**
**APR 0 8 2004**

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On August 18, 2003, plaintiff Local Union 15, International Brotherhood of Electrical Workers, AFL-CIO ("Local 15") filed a Complaint for Enforcement of Arbitration Award against defendants Exelon Corporation ("Exelon Corp."), Commonwealth Edison Company ("ComEd"), Exelon Generation Company ("Exelon Generation"), and Exelon Business Service Company ("Exelon BSC") (collectively "defendants"). Local 15 asks this court to enforce arbitration awards rendered by arbitrator Jay C. Fogelberg ("Fogelberg"). On February 2, 2004, defendants moved to remand this action to Fogelberg for further arbitration. On February 13, 2004, the parties, pursuant to Federal Rule of Civil Procedure 56, filed cross-motions for summary judgment, with Local 15 requesting a judgment enforcing the awards and defendants seeking a judgment of remand. For the reasons explained herein, defendants motions for remand and summary judgment are granted.

1

33

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendants ComEd, Exelon Generation, and Exelon BSC are signatories to a collective bargaining agreement ("CBA") with Local 15, which represents thousands of ComEd, Exelon Generation, and Exelon BSC employees. Defendant Exelon Corp. is not a party to this CBA, and Local 15 does not represent Exelon Corp. employees. Commencing in July 2001, ComEd and Exelon Generation eliminated various positions throughout their workforces, which led to certain of their clerical and physical employees being "bumped" from their positions and, in some instances, laid off. In August and September 2001, Local 15 filed three grievances contending, among other things, that this "bumpdown-layoff" procedure and other aspects of the bumpdown and layoffs violated the CBA. The grievances proceeded through the steps of the CBA's grievance-arbitration clause, and, because they could not be resolved internally, the parties proceeded to arbitration.

Fogelberg was selected as the impartial arbitrator. He conducted arbitration hearings for six days in February 2002 and five days in June 2002. ComEd and Exelon Generation were parties to this arbitration; however, Exelon Corp. and Exelon BSC were not. The eleven days of hearings before Fogelberg generated over 2,400 pages of transcripts. On December 31, 2002, Fogelberg issued an eighty-one page Opinion and Award. In the Opinion and Award, Fogelberg denied most of Local 15's claims, including Local 15's claims that laid off employees were improperly "replaced" with contractors or management personnel and that the "bumpdown-layoff" process used for employees in certain higher-level classifications was improper. Fogelberg did, however, sustain Local 15's grievances involving the "bumpdown-layoff" procedure used with respect to employees who were bumped into or within certain "pool" job classifications (specifically the Entry Clerk,

Officer Service Representative, Officer Service Specialist, Meter Reader, and Station Laborer job classifications).

Fogelberg concluded his December 31, 2002, Opinion and Award with the following directive:

> Accordingly, the parties are forthwith directed to meet and negotiate with the express intent of restoring the rights of those Grievants who were adversely affected by the (improper) extension of each of the silos into the Pool, and to formulate an [sic] new process which will recognize and properly restore their service rights in selecting entry level positions system-wide.

(12/31/02 Opinion & Award[1] at 80.) Fogelberg also required the parties to notify him via a mutually executed letter within sixty calendar days following receipt of the Opinion and Award of the outcome of the ordered discussions. Finally, Fogelberg stated that he "will retain jurisdiction in this matter for the limited purpose of resolving any issues that may arise in connection with the remedy awarded here." (Id. at 81.)

Pursuant to Fogelberg's directions, the parties met on several occasions to discuss implementation of the Opinion and Award and reached agreement on certain issues but continued to disagree as to others. On March 7, 2003, the parties jointly submitted to Fogelberg a document entitled "Agreements and Differences Relating to the Implementation of Arbitration Award." In this memorandum, the parties highlighted various areas of agreement and disagreement. Then, on March 10, 2003, the parties submitted position statements detailing their respective positions as to the issues of disagreement identified in the March 7, 2003, joint submission.

On May 9, 2003, the parties' attorneys met with Fogelberg to discuss the issues set forth in the parties' joint submission and separate position statements. On May 15, 2003, Fogelberg issued

---

[1] Defs.' Exs. to 56.1 Stmt., Ex. 5; Exs. in Supp. of Pl.'s Mot. for Summ. J., Ex. 2.

a document entitled "Resolution of Outstanding Issues." Concluding this "Resolution," Fogelberg stated:

> It is believed that the foregoing serves to adequately resolve all outstanding issues in connection with the Award's implementation, and expected that the parties will now be able to fully and finally effectuate the remedy ordered. Nevertheless, I will continue to retain jurisdiction with regard, exclusively, to any issues that may arise concerning the matters addressed here.

(5/15/03 Resolution of Outstanding Issues[2] at 6.)

Thereafter, on May 21, 2003, defendants' counsel sent a letter to Fogelberg asking for further clarification regarding the process by which eligible employees under the Opinion and Award could reselect job positions. On June 5, 2003, in response to this letter, Fogelberg held a telephone conference call with the parties' attorneys. Fogelberg then sent the parties a letter dated June 11, 2003, the body of which stated:

> Following our conference call last week, and upon further deliberation, I remain convinced that both sides would be best served through an implementation of the "Resolution of Outstanding Issues" issued May 15th, in connection with the above-referenced matter. While attempting to rule on the four remaining issues that had been identified by the parties subsequent to the issuance of the Opinion & Award, I would also note that it was intentionally drafted, in part, to bring about closure through further discussions between the appropriate representatives at the table, should that be necessary. Utilizing the document in this manner, while negotiating in good faith will, in my judgment, bring about a final and complete resolution of whatever issues that might remain. According [sic] no further clarification is now deemed appropriate.

(6/11/03 Fogelberg Letter.[3])

---

[2] Defs.' Exs. to 56.1 Stmt., Ex. 8; Exs. in Supp. of Pl.'s Mot. for Summ. J., Ex. 6.

[3] Defs.' Exs. to 56.1 Stmt., Ex. 13; Exs. in Supp. of Pl.'s Mot. for Summ. J., Ex. 8; Defs.' Exs. to Consol. 56.1(b)(3)(A) Resp. to Pl.'s 56.1(a) Stmt., Ex. H.

During June, July, and the first half of August 2003, the parties and their attorneys corresponded, exchanged settlement proposals, and met on several occasions in an attempt to resolve the outstanding issues. On August 18, 2003, Local 15 filed this action to enforce Fogelberg's December 31, 2002, Opinion and Award and May 15, 2003, Resolution of Outstanding Issues. As of that date, August 18, 2003, the parties continued to disagree over various issues involving implementation of the Opinion and Award and "Resolution," including the following: (1) the identity of the adversely affected employees eligible for a remedy under the Opinion and Award; (2) whether certain employees who elected not to take required tests for certain job positions, or took and failed such required tests, are eligible for a remedy under the Opinion and Award; (3) whether certain individuals who resigned or were terminated since the July 2001 layoffs leading to arbitration, or since May 15, 2003, are eligible for a remedy under the Opinion and Award; (4) the content of the notification letter to be sent to adversely affected employees regarding implementation of the Opinion and Award; (5) what job positions are to be made available for selection by eligible employees, and in particular, the number and location of the Station Laborer positions that must be made available; and (6) whether offsets may be made to any backpay otherwise payable under the Opinion and Award for certain Voluntary Separation Plan severance benefits previously paid.[4]

---

[4] Because Local 15 did not cite to the record to dispute paragraph 37 of defendants' statement of undisputed facts, the extent of the parties' disagreements, which are enumerated above, is deemed admitted. Local 15 states that it "has informed Defendants that it does not agree that there are issues involving the implementation of Arbitrator Fogelberg's Arbitration Award." (Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 37.) However, Local 15 does not cite to anything in support of this position. Pursuant to Local Rule 56.1(b)(3)(A), in the case of disagreement, Local 15 must respond with "specific references to the affidavits, parts of the record, and other supporting materials relied upon . . . ." See also Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 871 (7th Cir. 2000) ("'An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission.'") (citations omitted). Regardless, it is clear to this court, in reviewing the evidence submitted, that

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat a motion for summary judgment; the nonmoving party must identify with reasonable particularity the evidence upon which that party relies. Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 898 (7th Cir. 2003); Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). Finally, the evidence relied upon must be competent evidence of a type otherwise admissible at trial. Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002).

## ANALYSIS

Both parties seem to agree that the material facts are undisputed. The central issue here concerns Arbitrator Fogelberg's intent. Local 15 asks this court to enforce Fogelberg's December

---

significant issues regarding implementation still remain and must be resolved.

31, 2002, Opinion and Award and May 15, 2003, Resolution of Outstanding Issues.[5] Defendants argue that because Fogelberg has not issued a final and binding order, this action should be remanded to him for further proceedings.[6]

As defendants point out, this court cannot review an arbitration award under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, unless the award is final and binding. Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co., 372 U.S. 517, 519 (1963); see also 22A Fed. Procedure § 52:2022 (Lawyers Ed. 2003) ("Generally, a District Court may review an arbitrator's rulings pursuant to 29 U.S.C.A. § 185 only after there is a final award containing findings as to liability and as to the remedy."). According to the Seventh Circuit, "[t]o be considered 'final,' an arbitration award must be intended by the arbitrator to be his complete determination of every issue submitted to him." Anderson v. Norfolk & W. Ry. Co., 773 F.2d 880, 883 (7th Cir. 1985). Thus, this court must consider whether Fogelberg intended, by his December 31, 2002, Opinion and Award and May 15, 2003, Resolution of Outstanding Issues, to resolve, definitely, every issue before him. Based on the undisputed material facts, this court concludes that Fogelberg did not intend the Opinion and Award and "Resolution" to be final.

In the Opinion and Award, Fogelberg specifically retained jurisdiction "for the limited purpose of resolving any issues that may arise in connection with the remedy awarded here." (12/31/02 Opinion & Award at 81.) This court agrees with Judge Andersen in Ameritech Services, Inc. v. Local Union No. 336, International Brotherhood of Electrical Workers, AFL-CIO, No. 96 C

---

[5] This court understands that Local 15 seeks enforcement of the Opinion and Award *and* "Resolution," not just the Opinion and Award.

[6] It is important to note that defendants are not seeking to vacate Fogelberg's decisions. In fact, they request nothing more than a remand for further arbitration.

5897, 1997 WL 222439, at *7 (N.D. Ill. Apr. 30, 1997), that an award that leaves "substantive tasks for the arbitrator to perform–namely, the determination of a remedy" is not final. Here, two subsequent documents from Fogelberg support the conclusion that an enforceable remedy has yet to be determined.

First, after Fogelberg stated that he believed he had resolved the outstanding issues and expected that the parties would be able to fully and finally effectuate the remedy ordered, Fogelberg expressly "continue[d] to retain jurisdiction with regard, exclusively, to *any* issues that may arise *concerning the matters addressed here.*"[7] (5/15/03 Resolution of Outstanding Issues at 6) (emphasis added). Fogelberg made clear that he would continue to decide any issues related to the "Resolution," including implementation of the remedies ordered. While not dispositive, this court concurs with Judge Hart that Fogelberg's "purported retention of jurisdiction . . . provides additional evidence that he did not intend the award to be final." GES Exposition Servs., Inc. v. Bates, No. 97 C 3716, 1998 WL 142456, at *5 (N.D. Ill. Mar. 20, 1998); see also Orion Pictures Corp. v. Writers Guild of Am., W., Inc., 946 F.2d 722, 724 (9th Cir. 1991) ("Where an arbitrator retains jurisdiction in order to decide a substantive issue the parties have not yet resolved, this retention of jurisdiction 'indicates that the arbitrator did not intend the award to be final.'") (citation omitted). Moreover, the "Resolution" ordered further negotiations between the parties to resolve issues concerning those adversely affected employees who have resigned or otherwise been terminated since July 13, 2001. (5/15/03 Resolution of Outstanding Issues at 5.) Therefore, Fogelberg contemplated further

---

[7] Local 15 quotes from the May 15, 2003, "Resolution" but conveniently (for it) omits the sentence quoted above regarding Fogelberg's retention of jurisdiction. (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 5; Pl.'s Reply in Supp. of Its Mot. for Summ. J. at 6.) Local 15 never addresses this crucial sentence.

negotiations between the parties, over which he specifically retained jurisdiction. The foregoing are strong indicators that Fogelberg "envision[ed] further action by the parties and the arbitrator," which is evidence that the award was not intended to be final. GES Exposition Servs., 1998 WL 142456, at *4.

In fact, after issuing the "Resolution," Fogelberg continued to work with the parties. After receiving a letter from defendants' counsel seeking clarification, Fogelberg conducted a telephone conference call with the parties' attorneys. Thereafter, he sent the parties a letter. If Fogelberg believed that the arbitration was complete, final, and binding, presumably he would not have conducted the telephone conference nor addressed the issue in the June 11, 2003, letter.

Second, maybe the strongest evidence of Fogelberg's intent is this June 11, 2003, letter to the parties' attorneys. This court agrees with defendants that this letter makes clear that Fogelberg called the parties back to the bargaining table to work to resolve the outstanding issues. In this letter, Fogelberg indicated that he believed that implementation of the May 15, 2003, "Resolution" would best serve both sides. Continuing, he stated: "While attempting to rule on the issuance of the Opinion & Award, I would also note that it [the "Resolution"] was intentionally drafted, in part, *to bring about closure* through *further discussions* between the appropriate representatives at the table, should that be necessary."[8] (6/11/03 Fogelberg Letter) (emphasis added). Thus, further discussions between the parties, and if necessary Fogelberg, to implement the "Resolution" were clearly intended in order to "bring about" final resolution. Furthermore, Fogelberg wrote: "Utilizing the document

---

[8] Local 15 also is selective in its quotation of the June 11, 2003, Fogelberg letter. (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 6; Pl.'s Mem. in Supp. of Summ. J. at 6, 10; Pl.'s Reply in Supp. of Its Mot. for Summ. J. at 7.) It leaves out the sentence quoted above–inserting "* * *"–and never addresses its meaning.

9

[the "Resolution"] in this manner, while negotiating in good faith *will*, in my judgment, *bring about a final* and *complete* resolution of whatever issues that might remain."[9] (Id.) (emphasis added). Again, Fogelberg made clear that he believed a *final* resolution had not been reached and would come about at a later time, through further negotiations. Had the arbitration already been final, Fogelberg's expression of his hope for such resolution would not have been necessary. Finally, Fogelberg stated that "no further clarification is *now* deemed appropriate." (Id.) (emphasis added). The use of the word "now" evidences that Fogelberg believed that he could at a later time, if required because the parties were unable to resolve their differences, provide clarification. Because the undisputed evidence demonstrates that "the arbitrator specifically left the resolution of the issues subject to further negotiations between the parties," Anderson, 773 F.2d at 883, and did not intend for his award to be final, this court finds that the awards were not final and binding and thus not reviewable at this time.

The undisputed evidence also establishes that disputes remain to be resolved over substantive issues, regarding, *inter alia*, implementation of the award and remedies. After the May 15, 2003, "Resolution," the parties and their attorneys sent each other letters, exchanged settlement proposals, and met on several occasions in an attempt to resolve the outstanding issues. Unlike Dreis & Krump Manufacturing Company v. International Association of Machinists and Aerospace Workers, District No. 8, 802 F.2d 247, 251 (7th Cir. 1986), resolution of the case at hand requires more than merely consulting the defendants' records. Here, as the parties' continued negotiations evidence, more than mere ministerial details are left. See GES Exposition Servs., 1998 WL 142456, at *7 ("[R]esolution

---

[9]Again, Local 15 omits this important sentence. (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 6; Pl.'s Mem. in Supp. of Summ. J. at 6, 10; Pl.'s Reply in Supp. of Its Mot. for Summ. J. at 7.)

of the question of remedies [and their implementation] requires more than mere ministerial action on the part of the arbitrator or the court."). Clearly, after the May 15, 2003, "Resolution," much work involving substantial issues remained–and still remains–for the parties and Fogelberg. Again, although the arbitrator's intent is most important, this is a further indication that the arbitration is not final.

In carefully considering the issues, this court agrees with defendants that remanding this case for further proceedings before Fogelberg is consistent with federal labor law and is in the parties' best interests. See Millmen Local 550, United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Wells Exterior Trim, 828 F.2d 1373, 1375 (9th Cir. 1987) ("To allow judicial intervention prior to the final award would contravene the fundamental federal labor policy of deference to contractual dispute resolution procedures, and would interfere with the purpose of arbitration: the speedy resolution of grievances without the time and expense of court proceedings."). In light of the factually and procedurally complex nature of this case, this court believes that Fogelberg is best equipped to resolve the parties' remaining issues. Fogelberg presided over eleven days of hearings, resulting in over 2,400 pages of transcripted testimony, and issued an eighty-one page Opinion and Award. Fogelberg has been involved extensively with these issues from their inception. As the presiding arbitrator over this dispute, he is well-versed in the details of this case and understands the parties' respective positions as to the various issues. Additionally, Fogelberg has expressed a willingness to provide further thoughtful guidance to the parties, and this court hopes that such guidance will lead to a mutually agreeable resolution of this dispute. Consequently, this action is remanded back to Fogelberg to allow him to continue to work with the parties and to enter a final and binding award. This court wants to make clear that it is not vacating or refusing to enforce the

December 31, 2002, Opinion and Award and May 15, 2003, Resolution of Outstanding Issues. Indeed, this court expects that the awards will be implemented. At this time, though, the arbitrator is not finished. Until he is, there is nothing for this court to enforce.

## CONCLUSION

Accordingly, plaintiff's motion for summary judgment is denied. Plaintiff's request for attorneys' fees is denied. Defendants' motion for summary judgment is granted. Defendants' motion to remand is granted. This action is remanded to arbitrator Jay C. Fogelberg for further arbitration proceedings and entry of a final binding award. Any other pending motions are moot.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: April 7, 2004